IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CHARLES TINSLEY, | ) | CASE NO. 1:25-CV-00427-CEH |
| | ) | |
| Plaintiff, | ) | CARMEN E. HENDERSON |
| | ) | UNITED STATES MAGISTRATE JUDGE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| Defendant, | ) | |

## I. Introduction

Charles Tinsley ("Tinsley" or "Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me by consent of the parties under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 4). For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's final decision denying Tinsley benefits.

## II. Procedural History

On September 15, 2022, Tinsley filed an application for DIB, alleging a disability onset date of December 31, 2015. (ECF No. 7, PageID #: 40). The application was denied initially and upon reconsideration, and Tinsley requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On February 7, 2024, an ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (*Id.* at PageID #: 59-82). At that time, Plaintiff amended his alleged onset date to January 1, 2020. (*Id.* at PageID #: 64). On February 22, 2024 the ALJ issued a written decision finding Tinsley was not disabled. (*Id.* at

1

PageID #: 40-52). The ALJ's decision became final on January 7, 2025, when the Appeals Council declined further review. (*Id.* at PageID #: 24-26).

On March 4, 2025, Tinsley filed his Complaint to challenge the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 8, 9). Tinsley asserts the following assignments of error:

> (1) Whether the ALJ erred when she rejected two consistent opinions from the treating physician.
>
> (2) Whether the ALJ erred in cherry picking evidence in the evaluation of pain under Regulation 96-3p.
>
> (3) Whether the ALJ failed to create a logical bridge between the evidence of record and her assessment of Plaintiff's residual functional capacity.

(ECF No. 8 at 1).

### III. Background

#### A. Relevant Hearing Testimony

The ALJ summarized Tinsley's disability allegations and the relevant testimony from Tinsley hearing:

> In the Adult Disability Report, the claimant alleged work limitations due to a knee surgery, hip disease, and degenerative disc disease (Exhibit 2E). In his Adult Function Report, the claimant wrote that he is unable to sit or stand for even short periods due to pain, has problems with balance and holding things, and that pain medications only provide up to 2 hours of relief (Exhibit 5E). The claimant wrote that he can only lift up to five pounds, has postural limitations, can only walk up to 15 feet at a time, has problems getting along with others due to irritability, and can have problems with focus due to pain. He stated that he is able to drive, talk with friends over the phone, and is able to follow instructions. He stated that he has a prescribed knee brace and uses a back brace.
>
> At the hearing, the claimant testified that he is unable to work due to pain in the back, knees, and hips. The claimant is a younger

> individual and was 44 years of age on the hearing date. The claimant stated that he lives in a house with his wife and two children, ages 17 and 20. He stated that he is able to drive his daughter to school. The claimant stated that he takes pain medications, but it does not help. The claimant stated that he has a problem sleeping due to his hip pain, which affects his mood. The claimant testified that he underwent a left hip procedure a week prior to the hearing, and he still has pain in the right hip. He stated that on a typical day, he takes his daughter to school and helps with some chores such as folding laundry but has problems cooking due to limitations with standing. He stated that he is able to shower and get dressed. The claimant testified that he does not usually go grocery shopping but can go make small purchases. He stated that he does not use anything to help him walk but has problems climbing stairs. The claimant testified that he could stand for 10 minutes at a time, can sit for 15 minutes at a time, can carry 10 pounds, and can walk half a block at a time. The claimant stated that his back pain comes and goes, and the pain is better when he changes position. The claimant stated that he needs to lie down every day for three hours.

(ECF No. 7, PageID #: 45-46).

### B. Relevant Medical Evidence

The ALJ also summarized Tinsley's health records and symptoms:

> In February 2020, imaging of the left knee showed ACL and medial meniscus tears (Exhibit 2F/18). The claimant stated that he injured his left ACL about 10 years ago and injured his left medial meniscus about 5 years ago, and he recently began to experience left knee pain after playing basketball. In March 2020, the claimant underwent an ACL reconstruction and partial medial meniscectomy surgery in the left knee (Exhibit 4F/17). A follow-up treatment note in July 2020 indicated medical improvement, as the claimant stated that he was doing very well in general but with some pain when running (Exhibit 2F/14). The claimant was also no longer wearing a knee brace (Exhibit 2F/14). In October 2020, the claimant complained of right foot pain, but an x-ray of the right foot mostly showed mild congruent hallux valgus (Exhibit 4F/6). Evidence of improvement following his left knee surgery indicate that he can perform some work activities.
>
> The record also indicates bilateral hip pain, but the record also indicates medical improvement following his hip procedures. In January 2021, the claimant stated that he started to have hip pain

that started in the last two months (Exhibit 4F/3). The claimant stated that he is doing very well from his ACL surgery, but his altered gait may have contributed to hip pain. Medical imaging found mild degenerative joint disease in both hips and mild to moderate degenerative joint disease in both sacroiliac ("SI") joints (Exhibit 2F/21). The examiner recommended conservative treatment. The claimant was started on physical therapy and attended 8 sessions, but he was discharged from physical therapy in July 2021 due to noncompliance (Exhibit 6F/2). In an annual physical in March 2022, the claimant complained of low back pain on the right side and right hip pain that sometimes radiates to the right thigh (Exhibit 7F/10). A physical examination noted some tenderness to deep palpation in the right SI joint and left ulnar groove (Exhibit 7F/12). However, the examination also noted that the claimant was in no acute distress, had normal gait, and normal straight leg raising on the right side. An x-ray of the right hip and lumbosacral spine had normal findings (Exhibit 7F/17, 19). Medical imaging showing degenerative changes in the hips and SI joints indicate work limitations. However, findings that the claimant had normal gait and normal muscle strength indicate that he could perform daily activities independently.

In August 2022, the claimant complained of low back pain after playing basketball (Exhibit 7F/5). A physical examination noted some lower back pain with palpation, but also noted that the claimant was in no acute distress and had normal gait. The claimant was advised to use anti-inflammatory patches and to take ibuprofen 600mg. The claimant declined physical therapy and was advised to perform daily back exercises at home. A December 2022 examination noted positive straight leg raising on the left side and right shoulder pain to deep palpation (Exhibit 8F/4). However, the examiner noted that the claimant does not need assistance with sitting, standing, or walking. He was started on meloxicam 15 mg and gabapentin 300 mg. Ongoing findings that the claimant did not need assistance with sitting, standing, or walking indicate that he can perform some work.

In a January 2023 consultative examination with Dorothy Bradford M.D., the claimant stated that he has right hip pain with ambulation, has low back pain and is unable to sit or stand for 20 minutes continuously, and still has pain after his 2020 left knee surgery (Exhibit 10F/7). Upon physical examination, Dr. Bradford noted that the claimant had mildly decreased range of motion in the right hip. However, Dr. Bradford also found that the claimant was in no acute distress, had normal strength in all muscle groups, had normal gait, and had no focal neurological deficit. An x-ray of

4

the left knee noted mild patellofemoral arthritis, and imaging of the pelvis noted minimal arthritis (Exhibit 9F/1, 2). Dr. Bradford assessed the claimant with right hip impingement and degenerative joint disease of the left knee and lumbar spine without radiculopathy. Dr. Bradford's findings indicate some ongoing left knee pain and hip pain. However, findings of normal muscle strength and intact neurological findings indicate that he could perform activities of daily living despite his pain.

Later in January 2023, the claimant complained of right shoulder pain, but an x-ray of the right shoulder had unremarkable findings (Exhibit 11F/10, 15). The claimant received an injection in his right shoulder. In another January 2023 treatment note, the claimant alleged right hip pain, and an x-ray of the right hip found femoroacetabular impingement (Exhibit 12F/24; 13F/10). However, the examination also noted intact sensation in the lower extremities and normal muscle strength. In February 2023, magnetic resonance imaging ("MRI") of the right hip noted a labral tear, and an MRI of the right shoulder found minimal tendinopathy (Exhibit 13F/9; 11F/14). Imaging of the right shoulder that had mild findings indicate that he can use his right arm to perform work activities.

In a March 2023 treatment note with Divya Sree Madhuramthakam, M.D. to establish care for increased anxiety and insomnia, the claimant stated that he has been experiencing excruciating pain and is unable to sleep, which probably leads to his increasing anxiety (Exhibit 16F/11). The claimant was advised to take medications including Tramadol, Tylenol, and gabapentin. One week later, the claimant told Dr. Madhuramthakam that his pain has been better managed with pain medications, but he has pain with ambulation (Exhibit 16F/11). However, a physical examination did not appear to specifically note acute problems other than suppleness in the neck (Exhibit 16F/16). The claimant was prescribed Atarax and Luvox for anxiety and depression. In April 2023, a home sleep apnea test report had findings suggestive of only mild obstructive sleep apnea (Exhibit 16F/24). The claimant's statement that his pain had improved with medication indicate that medication compliance can help manage his pain.

On May 4, 2023, the claimant underwent right hip arthroscopy, decompression, and labral repair surgery (Exhibit 17F/21). Follow-up treatment notes one week later noted that the claimant was doing well and was healing from the procedure (Exhibit 17F/24). Another follow-up treatment note in June 2023 again noted improvement in his right hip pain (Exhibit 21F/12). However, the

5

      claimant complained of increasing pain in the left side, and medical imaging of the left hip found a cam type deformity with femoral acetabular impingement and tearing of the anterior labrum (Exhibit 21F/15). Treatment notes in July and August 2023 continued to note "significant" improvement following his right hip surgery (Exhibit 12F/10, 13). However, the claimant stated that his left hip pain has become "debilitating," and he was scheduled for left hip surgery (Exhibit 23F/13). Imaging of the lumbar spine in November 2023 found degenerative changes at L5-S1 (Exhibit 26F/2). The claimant testified that he underwent a left hip surgery one week prior to the hearing.

(ECF No. 7, PageID #: 47-48).

    **C. Opinion Evidence at Issue**

    The ALJ considered multiple medical opinions in the record. Of relevance to the issues before the Court are two opinions of Plaintiff's provider, Dr. Madhuramthakam.

    In December 2020, Dr. Madhuramthakam completed a medical source statement indicating Plaintiff was able to occasionally lift ten pounds; was limited to two hours of standing and/or walking, and only half an hour uninterrupted; had similar limitations in sitting; could never climb, crouch, kneel, or crawl, but could occasionally balance and stoop; could occasionally reach, push/pull, and use fine manipulation, but could rarely use gross manipulation; experienced severe pain that would interfere with his concentration, ability to remain on-task, and cause absenteeism; would need two hours of additional breaks a day; and would need to be able to alternate positions between sitting, standing, and walking at will. (ECF No. 7, PageID #: 873-74). As the medical findings to support his assessments, Dr. Madhuramthakam listed "left hip osteoarthritis." (*Id.*).

    Dr. Madhuramthakam completed a second medical source statement in March 2023,[1]

---

[1] Dr. Madhuramthakam also authored an opinion regarding Plaintiff's mental capacity, which the ALJ found persuasive. (ECF No. 7, PageID #: 48, 732-33). As Plaintiff does not challenge the ALJ's treatment of this opinion, it is not discussed further here.

further limiting Plaintiff to only occasionally lifting five pounds; needing to elevate his legs 45 degrees at will; and being prescribed a cane and brace; but finding that Plaintiff could now occasionally climb, crouch, kneel, and crawl and frequently reach and use fine and gross manipulation. (*Id.* at PageID #: 729-730). Dr. Madhuramthakam cited Plaintiff's "femoroacetabular impingement of right hip" and "acetabular labeum tear right" as supporting his assessment. (*Id.*).

The ALJ found Dr. Madhuramthakam's opinions unpersuasive. (*Id.* at PageID #: 49).

## IV. The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2023.

2. The claimant did not engage in substantial gainful activity during the period from his amended alleged onset date of January 1, 2020 through his date last insured of December 31, 2023 (the "relevant period") (20 CFR 404.1571 et seq.).

3. Through the date last insured, the claimant had the following severe impairments: left knee arthritis, lumbar degenerative changes, bilateral hip femoral acetabular impingement and labral tear, status post right hip arthroscopy, and tendinopathy of right shoulder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). In addition, the claimant could lift/carry 20 pounds occasionally and 10 pounds frequently, and he could stand/walk for 2 hours and sit for 6 hours in an 8-hour workday. The claimant must alternate sitting and standing every 20 minutes to relieve pain and

> discomfort. The claimant could occasionally push/pull with the lower extremities. The claimant could never climb ladders/ropes/scaffolds, kneel, crouch, or crawl; and could occasionally climb ramp/stairs, balance, and stoop. The claimant could frequently perform reaching with the right upper extremity. The claimant could have no work around heavy machinery or unprotected heights.
>
> 6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565)
>
> …
>
> 10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a).
>
> 11. The claimant was not under a disability, as defined in the Social Security Act, at any time from January 1, 2020, the amended alleged onset date, through December 31, 2023, the date last insured (20 CFR 404.1520(g)).

(ECF No. 7, PageID #: 42-45, 50-52).

## V. Law & Analysis

### A. Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

8

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B. Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### C. Discussion

Tinsley raises three issues on appeal.[2] First, he argues the ALJ erred in evaluating his pain by cherry-picking the record instead of considering it in its entirety. (ECF No. 8 at 12-16). Next, Plaintiff argues the ALJ erred in rejecting Dr. Madhuramthakam's opinions. (*Id.* at 17-20). Finally, Plaintiff argues the ALJ erred because she failed to create a logical bridge between the evidence and Plaintiff's RFC. (*Id.* at 21-22).

**1. Consideration of Plaintiff's Pain**

Plaintiff's first argument challenges the ALJ's consideration of his pain testimony. (ECF No. 8 at 12-16).

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of HHS*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304. Beyond the medical evidence, an ALJ should consider daily activities; location, duration, frequency, and intensity of the pain and other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of medication to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the induvial uses to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions. SSR 16-3p, 2017 WL 5180304 at *7-8. The ALJ need not analyze all seven factors

---

[2] In the body of his brief, Plaintiff presents his arguments in a different order than in his issues presented. (*Compare* ECF No. 8 at 1 *with id.* at 12-22). The Court addresses the issues in the order they are argued in the body of the brief.

10

but should show that he considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). An ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms … and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms. *Id.*; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18-cv-1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (*citing Rogers*, 486 F.3d at 248-49), *report & recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Plaintiff argues that in finding his symptoms allegations inconsistent with the record, "the ALJ selectively cited only limited evidence in the record, and made assumptions beyond her medical expertise—ultimately downplaying the severity and persistence of Plaintiff's pain rather than providing a fair evaluation of the evidence." (ECF No. 8 at 13). Plaintiff further argues the ALJ erred "in failing to focus and evaluate evidence that documents the persistent reports made by Mr. Tinsley of hip, knee, and back pain" and "failed to provide a clear understanding of what evidence was or was not considered under the requirements of 16-3p." (*Id.* at 15).

The Commissioner responds that "[d]espite Plaintiff's protestations otherwise, the ALJ properly evaluated his subjective symptoms" and that determination should be given great weight and deference. (ECF No. 9 at 6). The Commissioner argues the ALJ properly considered multiple relevant factors, including the location, duration, frequency, and intensity of Plaintiff's impairments along with precipitating and aggravating factors; the effectiveness of Plaintiff's

medication, treatments other than medication, and other measures used to relieve pain; and Plaintiff's activities of daily living. (*Id.* at 8-9).

The Court agrees with the Commissioner. Here, the ALJ provided the following initial explanation for finding Plaintiff's allegations inconsistent with the record:

> As for the claimant's statements about the intensity, persistence, and limiting effects of his or her symptoms, they are not fully consistent with the record. The record indicates work limitations from the claimant's history of hip, knee, and shoulder pain. However, the record also indicates that his left knee surgery and right hip surgery have helped. The claimant testified that he recently underwent left hip surgery, and the record does not include evidence of complications from the recent surgery. Examiners consistently noted that the claimant can walk without assistive devices and had normal muscle strength. The claimant appears able to perform activities of daily living independently such as driving and performing personal care. The record also indicates that the claimant was able to engage in activities such as running and playing basketball after the alleged onset date. Treatment notes have not indicated a high degree of side effects from medications, and the claimant has declined to complete or follow up with recommended physical therapy. Overall, the medical record shows a greater level of functioning than generally alleged and is consistent with the ability to perform a limited range of sedentary work.

(ECF No. 7, PageID #: 46). As the Commissioner argues, this discussion reflects that the ALJ found Plaintiff's symptom allegations inconsistent with the overall record based on proper factors, including improvement with surgery, lack of objective evidence supporting limitations, and Plaintiff's daily activities. *See* SSR 16-3p, 2017 WL 5180304 at *7-8. Additionally, the citations provided by the ALJ throughout his discussion of the medical evidence amount to substantial evidence supporting the ALJ's conclusion. (*See* ECF No. 7, PageID #: 437 (doing well after surgery); 479 (doing "very well" after ACL surgery but believed altered gait resulted in hip pain); 515 (discharged from physical therapy for failing to schedule but noting he was "back in the gym 3-4 times a week"); 618 (noting back pain started after playing basketball and

12

was treated with ibuprofen); 695 ("left knee is doing very well in general but with running he has some pain"); 837 ("right side is doing great" after hip arthroscopy); 857 (reporting left hip pain but right was "in a much better place than it was before surgery"). Thus, the Court must defer to the ALJ's decision, "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."). Plaintiff's first argument fails.

### 2. Consideration of Dr. Madhuramthakam's Opinions

Plaintiff next challenges the ALJ's treatment of Dr. Madhuramthakam's opinions.

At step four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(e). Under the current regulations, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Nevertheless, an ALJ must "articulate how [he] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. § 404.1520c(c). The ALJ is required to explain how he considered the supportability and consistency of a source's medical opinion but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). Under the regulations, "[t]he more relevant the objective

13

medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be" and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical findings(s) will be." 20 C.F.R. § 404.1520c(c)(1)-(2).

Here, the ALJ provided the following explanation for finding Dr. Madhuramthakam's opinions unpersuasive:

> In December 2020, Dr. Madhuramthakam opined that the claimant could lift up to 10 pounds; could stand, walk, and sit for 2 hours; could occasionally reach, push/pull, and perform fine manipulation, and can rarely perform gross manipulation; has severe pain that interferes with concentration and job attendance; and requires additional unscheduled breaks totaling 2 hours (Exhibit 25F). In March 2023, Dr. Madhuramthakam gave a similar opinion but further limiting the claimant to only lifting/carrying up to 5 pounds occasionally (Exhibit 14F). The undersigned does not find these opinions persuasive. Dr. Madhuramthakam provided limited support for the high degree of functional limitations, only noting that the claimant has left hip osteoarthrosis and impingement and tear in the right hip. The claimant initially received treatment with Dr. Madhuramthakam for anxiety and insomnia rather than hip pain. The opinion is also not supported by a March 2023 physical with Dr. Madhuramthakam that did not appear to note a high degree of musculoskeletal findings (Exhibit 16F/12). The opinion is not consistent with the record showing that the claimant is able to walk without assistive devices and had improvement following his right hip surgery (Exhibit 17F/24).

(ECF No. 7, PageID #: 49).

Plaintiff argues "the ALJ failed to ground her rejection of these opinions to the evidence, and then reconcile it with the RFC assigned to Plaintiff, specifically when addressing the issue of pain and sustainability." (ECF No. 8 at 18). Plaintiff asserts that the ALJ's conclusion that Dr.

Madhuramthakam's opinions "lacked relevance because the claimant initially sought care for anxiety and insomnia rather than right hip pain" is a mischaracterization of the record because "Plaintiff's mental health complaints cannot simply be separated from his physical condition." (*Id.*). Additionally, Plaintiff argues the ALJ improperly relied on the lack of significant musculoskeletal findings to conclude Dr. Madhuramthakam's opinions were not supported by his own records because "[p]ain, by its nature, is subjective, and a lack of imaging or musculoskeletal abnormalities does not negate the presence of debilitating pain." (*Id.* at 19). Finally, Plaintiff argues the ALJ's reliance on the lack of need for an assistive device and improvement following surgery was improper because "[t]hese issues simply fail to address the critical question" of whether Plaintiff can sustain employment. (*Id.*).

The Commissioner responds that substantial evidence supports the ALJ's treatment of the opinions. (ECF No. 9 at 9). The Commissioner argues that in finding the opinions unpersuasive, the ALJ properly relied on the fact that the first opinion was only 10 days after Plaintiff's initial visit with Dr. Madhuramthakam; the lack of objective evidence to support the limitations; the opinions being set out in a checklist format; and inconsistencies in the overall record, including Plaintiff's own testimony that he did not need a brace or assistive device. (*Id.* at 10-11).

The Court once again agrees with the Commissioner. The ALJ's discussion of the opinions makes clear that he considered their supportability and found that the restrictive limitations were not supported by Dr. Madhuramthakam's own treatment notes. (ECF No. 7, PageID #: 49). As the ALJ noted, these treatment notes reflect that while Plaintiff attributed his anxiety partially to his pain and trouble sleeping, Plaintiff primarily sought care from Madhuramthakam for the anxiety and there were no abnormal musculoskeletal findings on examination. (*Id.* at 745-56). The ALJ's discussion also illustrates her conclusion that the

15

opinions were inconsistent with the overall record, specifically with respect to Plaintiff's ability to walk without assistive devices and improvement with surgery. (*Id.* at PageID #: 49). As the ALJ noted, Plaintiff himself denied needing an assistive device to walk. (*Id.* at PageID #: 72).

At best, Plaintiff points to additional evidence to argue for alternative treatment of Dr. Madhuramthakam's opinions. However, because the ALJ properly considered the supportability and consistency of the opinions and substantial evidence supports her analysis, it is the ALJ's decision that must be upheld. Plaintiff's second argument is without merit.

### 3. Logical Bridge

Finally, Plaintiff argues "[t]he ALJ's determination that [he] retains the residual functional capacity to perform full-time sedentary work is not supported by substantial evidence and does not provide a clear path of understanding to the result." (ECF No. 8 at 21). Specifically, Plaintiff argues the ALJ failed to account for his "chronic, debilitating pain that interferes with his ability to sit, stand, concentrate, and remain on task." (*Id.*).

The Commissioner responds that "[s]ubstantial evidence supports the ALJ's determination that Plaintiff was not disabled and could perform a range of sedentary work, despite his physical limitations." (ECF No. 9 at 11). The Commissioner argues "the ALJ discussed the medical evidence, the medical opinion evidence, and Plaintiff's subjective complaints in detail in setting forth the RFC determination" and properly relied on opinions from the State agency consultants in crafting the RFC. (*Id.* at 12-13).

Having reviewed the ALJ's decision, the Court rejects Plaintiff's argument because the ALJ built an accurate and logical bridge from the evidence of record to the RFC determination. The Court can easily follow the ALJ's explanation for finding Plaintiff retained the RFC set forth in the decision and finds substantial evidence in the records supports the ALJ's conclusion.

Specifically, the ALJ made clear that while Plaintiff had limitations due to his hip, knee, and shoulder pain, he retained the ability to perform sedentary work with some additional limitations, consistent with Plaintiff's noted improvement following various surgeries, his ability to complete daily activities and engage in more strenuous activities such as running, and the State agency opinions based on a review of the record. (*See* ECF No. 7, PageID #: 45-50).

It is hard to characterize Plaintiff's argument as anything more than a request that the Court review the evidence and reach a different conclusion than the ALJ. However, it is not the role of this Court "to reconsider the facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (citing *Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246 (6th Cir. 1995)). Rather, because substantial evidence supports the Commissioner's decision, the Court must defer to it, "even if there is substantial evidence that would have supported an opposite conclusion." *Wright*, 321 at 614. Thus, Plaintiff's final argument is without merit.

**VI. Conclusion**

Based on the foregoing, the Court AFFIRMS the Commissioner of the Social Security Administration's final decision denying Tinsley benefits.

Dated: November 19, 2025

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE